[ELECTRONICALLY FILED STAMP]
DATE FILED: 5/22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LARRY JOHNSON, JR.,

                      Plaintiff,

-v-

WARDEN DOTY; FATHER PAUL; IMAM
JOHN NASHID; WARDEN R. ORLANDO;
COMMISSIONER KEVIN CHEVERKO;
OFFICER KITT,

                      Defendants.

No. 15-CV-7823 (KMK)

OPINION & ORDER

KENNETH M. KARAS, District Judge:

Plaintiff Larry Johnson, Jr. ("Plaintiff"), currently an inmate at Connecticut Correctional Facility, brings this Action pursuant to 42 U.S.C. § 1983 against Warden Doty, Father Paul, Imam John Nashid, Warden R. Orlando, Commissioner Kevin Cheverko, and Officer Kitt (collectively, "Defendants"), for violation of Plaintiff's constitutional rights while he was incarcerated at Westchester County Jail.[1] Specifically, Plaintiff alleges that he was "deprived [of his right] to observe a (major) religious practice." (Compl. 4 (Dkt. No. 2).) Before the Court is Defendants' Motion To Dismiss the Complaint (the "Motion"). (See Dkt. No. 21.) For the reasons to follow, the Motion is granted.

I. Background

A. Factual Background

The following facts are taken from Plaintiff's Complaint and are assumed true for the purpose of resolving the instant Motion.

On October 5, 2014, Plaintiff, "along with others in the inmate Muslim population

---

[1] The Court notes that Defendant Warden Orlando is deceased. (See Defs.' Mem. of Law in Supp. of Mot. To Dismiss the Compl. 1 n.1 (Dkt. No. 23).)

awaited to be called to . . . offer the (Eid-ul[-]Adha) prayer." (Compl. 3.) Plaintiff avers that the prayer is "always called every year all over the world . . . between 8:00 AM [and] 9:30 AM," but that on October 5, 2014, "[t]he service was not called until lunch time feeding[,] a period of time in which all inmates are in the housing unit eating lunch [and therefore,] the prayer could not possibly be carried out the same time." (*Id.* (emphasis omitted).) "[T]he prayer was scheduled for 11:[00] AM to 12:[00] PM and . . . the first body of Muslims that were brought to the prayer area arrived there at approximately 11:45 AM or a little later," at which point "[t]he time for[] the prayer service was virtually over . . . and [inmates] were sent back to the[ir] housing unit." (*Id.*) Thus, "the service and the right to observe the prayer was denied to [Plaintiff] [and] others" and "the administrative leaders of this . . . facility . . . denied . . . [Plaintiff] of [his] . . . First Amendment right . . . to observe . . . Eid-ul-Adha service." (*Id.*) Plaintiff alleges that a result of the purported violation, he "suffer[s] from mental anguish, trauma, nightmares . . . of going to the hellfire for missing Eid[-]ul-Adha service and . . . sleep deprivation" and he has had to "seek mental health counseling." (*Id.*)

Plaintiff seeks monetary damages in the amount of one million dollars and injunctive relief in the form of a directive "for the administration to adhere to the time th[e] service is supposed to take place because it is more important a service than all of the days of Ramadan combined" and "to refrain from withholding services and/or programs that fall within [Plaintiff's] constitutional protection." (*Id.* at 5.)

B. Procedural History

Plaintiff filed his Complaint on October 2, 2015. (*See* Dkt. No. 2.) In a letter filed July 28, 2016, Plaintiff requested that the court appoint pro bono counsel. (*See* Dkt. No. 17.)[2] The

---

[2] Attached to Plaintiff's request for counsel is a letter from Plaintiff's mother, informing

Court denied the request on August 10, 2016. (*See* Dkt. No. 18.) Defendants filed the instant Motion To Dismiss and accompanying papers on September 19, 2016. (*See* Dkt. Nos. 21–24.) In a letter dated October 15, 2016, Plaintiff renewed his request for pro bono counsel and requested an extension of his time to submit an opposition to Defendants' Motion. (*See* Dkt. No. 25.) The Court denied Plaintiff's renewed request for counsel but granted Plaintiff a 30-day extension to file his opposition. (*See* Dkt. No. 26.) In a letter filed December 12, 2016, Plaintiff informed the Court that he had "yet to receive a response to the letter [he] sent the Court about . . . requesting counsel," and again reiterated his need for an attorney. (Dkt. No. 27.) In the same letter, Plaintiff also responded to Defendants' Motion To Dismiss. (*See id.* at 2–4.) In a memo endorsement issued December 15, 2016, the Court "construe[d] [the letter] as Plaintiff's response to the Motion" and again denied the request for counsel. (Dkt. No. 28.) Defendants did not file a reply. (*See* Dkt.)

## II. Discussion

### A. Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation, alteration, and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions

---

the Court that her son could not appear due to his incarceration and that her son does not have a lawyer to represent him. (*See* Dkt. No. 17.)

devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ." (alteration and internal quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the

plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted). In deciding a motion to dismiss a pro se complaint, it is appropriate to consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party in his papers opposing the motion" (italics omitted)). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B. Analysis

1. Plaintiff's Pleadings

As an initial matter, the Court notes that Plaintiff's Complaint consists of the standard Complaint form along with attachments of type-written letters to Commissioner Thomas J. Loughren, (*see* Compl. 8–10), a letter from Commissioner Loughren to Commissioner Cheverko

5

regarding a grievance Plaintiff filed, (*see id.* at 11), a "review" of the grievance from Warden Orlando, (*id.* at 12), and a copy of the grievance, (*see id.* at 13–14). Plaintiff also attaches excerpts from a text entitled "Essentials of Islam." (*See id.* at 15–19.)

### 2. Rule 10(b)

In addition to moving to dismiss pursuant to Rule 12(b)(6), Defendants seek to dismiss Plaintiff's Complaint because it fails to comply with Federal Rule of Civil Procedure 10(b). (*See* Defs.' Mem. of Law in Supp. of Mot. To Dismiss the Compl. ("Defs.' Mem.") 3–4 (Dkt. No. 23).)

Rule 10(b) provides, in relevant part: "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Defendants contend that "there are no separately numbered paragraphs as to each Defendant and their role in the alleged [violation of] [P]laintiff's First Amendment [r]ights, and such violation is prejudicial to . . . Defendants in terms of framing any type of response to the [C]omplaint . . . ." (Defs.' Mem. 3.)

Although the "special solicitude afforded to pro se civil rights litigants does not give them license to violate the Federal Rules of Civil Procedure," *Self v. LaValley*, No. 10-CV-1463, 2013 WL 1294448, at *3 (N.D.N.Y. Mar. 27, 2013) (italics omitted), the Court has an obligation "to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training," *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (italics omitted). Moreover, the Second Circuit has a "clearly expressed preference that litigation disputes be resolved on the merits." *Mejia v. Castle Hotel, Inc.*, 164 F.R.D. 343, 346 (S.D.N.Y. 1996); *see also Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995) (same); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) (same).

Here, Defendants' complaint as to the lack of paragraph numbering is "purely formalistic." *Warner Bros. Entm't Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 269 (S.D.N.Y. 2007). While Plaintiff's Complaint does not comport with the standard described in Rule 10(b), it is sufficient to enable Defendants to file a responsive pleading, as evidenced by the instant Motion. Accordingly, the Court declines to dismiss Plaintiff's Complaint pursuant to Rule 10(b). *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 446 F. Supp. 2d 163, 199 (S.D.N.Y. 2006) (denying motion to dismiss pursuant to Rule 10(b) where the defendants' arguments were "merely formalistic"); *Nat'l Cold Storage Co. v. Port of N.Y. Auth.*, 24 F.R.D. 404, 406 (S.D.N.Y. 1959) (denying motion to dismiss pursuant to Rule 10(b) where "[t]he complaint [wa]s not vague or ambiguous so as to prevent the defendant from reasonably framing a responsive pleading").

### 3. First Amendment

Defendants argue that Plaintiff fails to plausibly allege any violation of his constitutional rights by Defendants because the denial of a single religious service does not rise to the level of a constitutional violation. (*See* Defs.' Mem. 5–7.)

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause," *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003), which includes the right to participate in religious services, *see Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993). A prisoner's First Amendment rights, however, are "[b]alanced against . . . the interests of prison officials charged with complex duties arising from the administration of the penal system." *Ford*, 352 F.3d at 588 (internal quotation marks omitted); *see also Weathers v. Rock*, No. 12-CV-1301, 2014 WL 4810309, at *4 (N.D.N.Y. Sept. 23, 2014) (explaining that the right of inmates to freely exercise a chosen

religion "is not limitless, and may be subject to restrictions relating to legitimate penological concerns"). Accordingly, a prisoner's free exercise claims are "judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Ford*, 352 F.3d at 588 (internal quotation marks omitted).

"To be entitled to protection under the free exercise clause of the First Amendment, a prisoner must make a threshold showing that the disputed conduct substantially burdened his sincerely held religious beliefs." *Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015) (alteration and internal quotation marks omitted); *see also Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) ("The prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs."); *Shapiro v. Cmty. First Servs., Inc.*, No. 11-CV-4061, 2014 WL 1276479, at *10 (E.D.N.Y. Mar. 27, 2014) ("At the motion to dismiss stage, a complaint must assert sufficient allegations necessary to establish that [the] plaintiff's claim is based upon a sincerely held religious belief." (alteration and internal quotation marks omitted)).[3] In determining whether a belief is "sincere," "an individual . . . need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious." *Ford*, 352 F.3d at 588 (alteration and internal quotation marks omitted). "A substantial burden on religious exercise exists where the state puts

---

[3] The Second Circuit has acknowledged that "[i]t has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014) (internal quotation marks omitted). The Second Circuit chose not to confront this question—or rather, not to alter the previous assumption that the substantial burden test is a threshold question. *Id.* Accordingly, this Court "will follow the analysis in *Holland* and proceed to consider the First Amendment analysis, assuming that the substantial burden test is still valid." *Weathers*, 2014 WL 4810309, at *4; *see also Williams v. Fisher*, No. 11-CV-379, 2015 WL 1137644, at *16 (N.D.N.Y. Mar. 11, 2015) (same), *appeal filed*, No. 15-1018 (Apr. 3, 2015).

substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Rossi v. Fishcer*, No. 13-CV-3167, 2015 WL 769551, at *7 (S.D.N.Y. Feb. 24, 2015) (internal quotation marks omitted). The Second Circuit has further specified that "[t]he relevant question in determining whether [the plaintiff's] religious beliefs were substantially burdened is whether participation in the [religious activity], in particular, is considered central or important to [the plaintiff's religious] practice." *Ford*, 352 F.3d at 593–94. Once a plaintiff satisfies this burden, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." *Salahuddin v. Goord*, 467 F.3d at 275. The burden then shifts to the inmate "to show that these articulated concerns were irrational." *Id.* (alteration and internal quotation marks omitted). "Significantly, the plaintiff's burden in demonstrating substantial burden is not a particularly onerous task." *Woodward v. Perez*, No. 12-CV-8671, 2014 WL 4276416, at *4 (S.D.N.Y. Aug. 29, 2014) (internal quotation marks omitted); *see also McEachin v. McGuinnis*, 357 F.3d 197, 202 (2d Cir. 2004) (same).

Defendants do not contest the sincerity of Plaintiff's religious beliefs. The Court, therefore, will assume for the purpose of resolving the instant Motion that Plaintiff's religious beliefs are sincerely held. Accordingly, the Court addresses whether Plaintiff has adequately alleged that his ability to exercise his religious beliefs was substantially burdened by the denial of his attending the one Eid-ul-Adha service.

Courts in the Second Circuit have repeatedly held that missing one religious service does not constitute a violation of a plaintiff's constitutional rights. *See, e.g., Johnson v. Newton*, No. 02-CV-1277, 2007 WL 778421, at *5 (N.D.N.Y. Mar. 13, 2007) (granting the defendant's motion for summary judgment because "missing one religious service does not constitute a substantial burden on an inmate's right to the free exercise of his religion" (internal quotation

9

marks omitted)); *Cancel v. Mazzuca*, 205 F. Supp. 2d 128, 142 (S.D.N.Y. 2002) (granting the defendant's motion to dismiss the plaintiff's First Amendment free-exercise claim that the defendant "prevented him, on one occasion, from attending a religious service"); *Wagnoon v. Gatson*, Nos. 99-CV-5872, 00-CV-3722, 2001 WL 709276, at *7–8 (S.D.N.Y. June 25, 2001) (granting the defendants' motion to dismiss the plaintiff's First Amendment free-exercise claim that defendants caused prisoner to miss all or part of his midday Muslim prayers on one day); *Gill v. DeFrank*, No. 98-CV-7851, 2000 WL 897152, at *1–2 (S.D.N.Y. July 6, 2000) (granting the defendants' motion for summary judgment dismissing the plaintiff's free-exercise claim that the defendants caused the plaintiff to miss one weekly religious service), *aff'd*, 8 F. App'x 35 (2d Cir. 2001).

However, here, Plaintiff has alleged that the service he missed was "major" and "more important . . . than all of the days of Ramadan combined." (Compl. 4–5.) And while the Court agrees with Defendants that Plaintiff has not alleged "that he was prevented from attending religious services on a regular basis or that he was *precluded* from attending any religious services on October 5, 2014, or any other days," (Defs.' Mem. 6 (emphasis added)), the fact that Plaintiff was "brought to the prayer area . . . at approximately 11:45 AM or a little later," that the "prayer service was virtually over by that time," and that Plaintiff was "sent back to [his] housing unit," effectively denied Plaintiff the ability to attend the allegedly important service, (Compl. 3). Liberally construing Plaintiff's Complaint "to raise the strongest arguments that [it] suggest[s]," *Sykes*, 723 F.3d at 403 (internal quotation marks omitted), the Court is willing to assume, without deciding, that Plaintiff has alleged that the Eid-ul-Adha service is "a religious practice that is 'central or important' to his practice of religion," *Rossi*, 2015 WL 769551, at *7 (quoting *Ford*, 352 F.3d at 593–94).

10

Yet despite these allegations, Plaintiff's claims fail because Plaintiff has not alleged personal involvement of any of Defendants in the purported violation of his rights. For example, Plaintiff does not indicate whether any of Defendants scheduled religious services, made decisions as to call-outs, or brought Plaintiff and other inmates to the service after the scheduled time. Indeed, besides listing the individuals as Defendants to this Action, Plaintiff does not make mention of a single Defendant throughout the Complaint. (*See generally* Compl.) "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). As Plaintiff has failed to state a claim that his constitutional rights were violated by any Defendant, Plaintiff's claim for monetary damages is dismissed. *See Aikens v. Royce*, No. 14-CV-663, 2016 WL 5720792, at *6 (S.D.N.Y. Sept. 30, 2016) (finding "lack of personal involvement alone is reason enough to dismiss [the plaintiff's constitutional] claim" (internal quotation marks omitted)); *Kempkes v. Downey*, No. 07-CV-1298, 2008 WL 852765, at *7 (S.D.N.Y. Mar. 31, 2008) ("Because [the] [p]laintiff has articulated no theory (plausible or otherwise) by which the . . . [d]efendants were personally involved in this alleged deprivation, . . . there is no [First Amendment] claim against them . . . .").[4]

"Personal involvement, however, is only required where the complaint seeks money damages, not where injunctive or declaratory relief is sought." *Courts v. Coombe*, No. 95-CV-2350, 1996 WL 312357, at *2 (S.D.N.Y. June 11, 1996). Here, the lack of personal involvement alleged is not a bar to Plaintiff's claims for injunctive relief. However, Plaintiff is no longer an

---

[4] Should Plaintiff file an Amended Complaint, he should make clear each Defendants' involvement in the alleged violations.

11

inmate at Westchester County Jail, (*see* Dkt. No. 17), and accordingly, his claims for injunctive relief against "the administration" at that facility are moot, *see Salahuddin v. Goord*, 467 F.3d at 272 ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."). Therefore, Plaintiff's claims for injunctive relief are dismissed.[5]

### III. Conclusion

For the above reasons, the Court grants Defendants' Motion To Dismiss. However, in light of Plaintiff's pro se status, and because this is the first adjudication of his claims on the merits, Plaintiff's claims for damages, and for damages only, are dismissed without prejudice. Plaintiff's claims for injunctive relief are dismissed with prejudice.

If Plaintiff wishes to file an Amended Complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order. The failure to do so may result in the dismissal of this Action with prejudice.

The Clerk of Court is respectfully requested to terminate the pending Motion. (Dkt. No. 21.)

SO ORDERED.

Dated: May 19, 2017
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[5] As to Defendants' argument that they are entitled to qualified immunity, the Court need not determine whether qualified immunity attaches because Plaintiff has not plausibly pled that Defendants violated his constitutional rights. *See Posr v. City of New York*, No. 10-CV-2551, 2013 WL 2419142, at *10 n.8 (S.D.N.Y. June 4, 2013) ("Because [the defendant] did not violate [the] [p]laintiff's [constitutional] rights, there is no need to consider if [the defendant] is entitled to qualified immunity."), *aff'd sub nom. Posr v. Ueberbacher*, 569 F. App'x 32 (2d Cir. 2014).

12