UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LARRY JOHNSON, JR.,

                      Plaintiff,

    v.

WARDEN DOTY, *et al.*,

                      Defendants.

No. 15-CV-7823 (KMK)

OPINION & ORDER

Appearances:

Larry Johnson, Jr.
Somers, CT
*Pro Se Plaintiff*

Irma W. Cosgriff, Esq.
Taryn A. Chapman, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

    Larry Johnson, Jr. ("Plaintiff"), currently an inmate at Osborn Correctional Institution, brings this pro se Action, pursuant to 42 U.S.C. § 1983, against Warden Doty, Father Paul, Imam John Nashid, Warden R. Orlando, and Officer Matthew Kitt (collectively, "Defendants"), alleging violation of his constitutional rights while he was incarcerated at Westchester County Jail. (*See* Third Am. Compl. ("TAC") (Dkt. No. 107).)[1] Before the Court is Defendants' Motion

---

[1] Orlando died in March 2015, some seven months before commencement of this Action. (*See* Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") 1 n.3, 18 (Dkt. No. 118).) Defendants first alerted the Court (and Plaintiff) to this in September 2016. (Dkt. No. 23.) Plaintiff has made no effort to substitute Orlando's successor or representative as a defendant under Federal Rule of Civil Procedure 25(d). Accordingly, dismissal of all claims against Orlando is required. *See Baron v. Miller*, No. 13-CV-153, 2015 WL 1788945, at *3 (N.D.N.Y.

To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (Not. of Mot. (Dkt. No. 115).) For the reasons that follow, the Motion is granted in part and denied in part.

I. Background

A. Factual History

The following facts are drawn from the Third Amended Complaint and are accepted as true for purposes of resolving the instant Motion.

At all relevant times, Plaintiff was an inmate at Westchester County Jail (the "Jail"). (TAC ¶ 1.) Plaintiff is a "devout" Muslim who "makes salaat (individual prayer) five times daily, faithfully attends [Jumu'ah] services every Friday, and observes all Islamic holidays as well as the strict requirements of those holidays, like fasting and attending group prayer ceremonies." (*Id.* ¶ 8.) On October 5, 2014, Plaintiff planned to observe Eid-ul-Adha, a "group prayer service" that "is an imperative part of the Ramadan holiday" and "must be administered by an Imam, before noon." (*Id.* ¶¶ 12–13.)

"In the weeks leading up to" Eid-ul-Adha, Plaintiff was informed by Imam Nashid, the Jail's Muslim chaplain, that the group prayer ceremony would take place between 11:00 a.m. and 12:00 p.m. on October 5, 2014. (*Id.* ¶¶ 6, 12.) Upon learning this, Plaintiff complained to various prison officials. First, Plaintiff wrote to Imam Nashid to tell him that 11:00 a.m. "was lunch time," "that no movement is allowed" during lunch until "all of the food trays were

---

Apr. 20, 2015) ("Under [Rule 25(a)], in the event a timely motion for substitution is not made, dismissal of any claim against a deceased defendant, other than a public officer sued solely in his official capacity, is required." (citation omitted)); *see also Mullen v. Village of Painted Post*, 356 F. Supp. 3d 275, 286 (W.D.N.Y. Jan. 25, 2019) (same).

2

returned, and that that process often takes upwards of [45] minutes." (*Id.* ¶¶ 14, 22.)[2] Imam Nashid told Plaintiff "that he would look into it," but never responded. (*Id.* ¶ 14.) Second, Plaintiff wrote to Father Paul — the Jail's religious coordinator and the official "responsible for scheduling . . . Islamic services," including the Eid-ul-Adha service — to inform him that he had complained to Imam Nashid and to further request that Father Paul "reschedule the service to a more appropriate time." (*Id.* ¶¶ 5, 9, 15, 22.)[3] Father Paul never responded. (*Id.* ¶ 15.) Third, Plaintiff wrote to Orlando — the Jail's "warden in operations" — and "inform[ed] him of the scheduling conflict." (*Id.* ¶ 16.) Plaintiff further told Orlando that Kitt — a correction officer at the Jail responsible for calling out inmates for prayer services — had "repeatedly interfere[d] with Islamic services by "constantly calling Islamic services very late, and forcing them to be ended early"; Plaintiff thus "request[ed] that Kitt not be put on the post responsible for calling and concluding the services." (*Id.* ¶¶ 7, 16, 23.) Plaintiff's letter to Orlando was "copied and sent to Doty, Orlando's superior officer." (*Id.* ¶¶ 16, 23.) Notwithstanding Plaintiff's requests, the Eid-ul-Adha service was not rescheduled to a different time and Kitt was not removed from his call-out responsibility. (*Id.* ¶ 17.)

On October 5, 2014, Kitt, acting "consistent with his prior actions" of "cancelling and [interfering] with Islamic services," did not call the Eid-ul-Adha service at 11:00 a.m. as scheduled, but rather called it at 11:45 a.m. (*Id.* ¶¶ 18, 21.) Further, "before those intent on attending said service could even leave the housing unit, Kitt called back and informed the housing unit officer not to release the inmates because the ceremony was already over." (*Id.*) As

---

[2] Plaintiff also alleges that Fahim M. Abdul-Aziz ("Abdul-Aziz") informed Imam Nashid of the same. (TAC ¶ 14.) It is not clear whether Abdul-Aziz is an official at the Jail, an inmate, or someone else.

[3] Plaintiff also alleges that Abdul-Aziz informed Father Paul of the same. (TAC ¶ 15.)

3

a result, Plaintiff was prevented from observing the Eid-ul-Adha service. (*Id.* ¶ 20.) "No safety and security concern" was present "that would warrant delaying or cancelling the . . . service." (*Id.* ¶ 19.)

B.  Procedural History

Plaintiff filed his initial Complaint on October 2, 2015. (Dkt. No. 2.) Defendants filed an initial motion to dismiss on September 19, 2016, (Dkt. Nos. 21–24), and Plaintiff responded on December 12, 2016, (Dkt. No. 27). On May 22, 2017, the Court issued an Opinion & Order (the "Opinion") granting that motion and dismissing the Complaint without prejudice. (Opinion 12 (Dkt. No. 31).) Plaintiff filed a First Amended Complaint on June 27, 2017, (Dkt. No. 34), and a Second Amended Complaint on May 8, 2018, (Dkt. No. 86).

On September 25, 2018, Plaintiff filed the instant Third Amended Complaint. (TAC (Dkt. No. 107).) On October 4, 2018, Defendants filed a letter seeking a pre-motion conference in anticipation of moving to dismiss. (Dkt. No. 108.) On October 10, 2018, the Court set a briefing schedule. Defendants filed the instant Motion To Dismiss and accompanying papers on November 13, 2018. (Not. of Mot.; Decl. of Irma Cosgriff, Esq. in Supp. of Mot. ("Defs.' Decl.") (Dkt. No. 116); Defs.' Mem.) Plaintiff filed a memorandum in opposition on December 14, 2018. (Opp'n of Larry Johnson To Defs.' Mot. ("Pl.'s Mem.") (Dkt. No. 120).) On January 11, 2019, Defendants filed a reply. (Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply") (Dkt. No. 121).)

II. Discussion

A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency

5

of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

  Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013

WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents that the plaintiff[] either possessed or knew about and upon which [the plaintiff] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

B.  Analysis

Defendants seek dismissal of the Third Amended Complaint principally on grounds that Plaintiff fails to state a claim under the First Amendment's Free Exercise Clause and that Plaintiff fails to allege the personal involvement of any Defendant in a constitutional violation. (Defs.' Mem. 11–18.)  The Court addresses each argument separately to the extent necessary.[4]

1.  First Amendment Free Exercise Claim

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause."  *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  A prisoner's free exercise rights, however, are "[b]alanced against . . . the interests of prison officials charged with complex duties arising from the administration of the penal system."  *Id.* (citation and quotation marks omitted).  Accordingly, a prisoner's free exercise claims are "judged under a

---

[4] Defendants also argue that Plaintiff fails to state a *Monell* claim. (Defs.' Mem. 9.)  Yet, Plaintiff does not bring official-capacity claims against Defendants, nor does he name a municipal entity as a defendant.  (*See* TAC 1 (noting in caption that claims are brought "individually").)  Indeed, Plaintiff confirmed as much. (*See* Pl.'s Mem. 2 ("Clearly the plaintiff requested all defendants be sued in their individual capacities.").)  Accordingly, the Court need not consider the *Monell* argument at this time.
  Defendants further argue that they are entitled to qualified immunity. (Defs.' Mem. 20.) This "argument," however, merely restates the qualified immunity caselaw without meaningfully applying that caselaw to the facts of this case.  Nor is this the first time that the Westchester County Attorney's Office has recently made a non-substantive qualified immunity argument to this Court.  *See, e.g.*, *Ben-Reuben v. Westchester County*, No. 17-CV-9156, 2019 WL 1406868, at *4 n.1 (S.D.N.Y. Mar. 28, 2019); *White v. Westchester County*, No. 18-CV-730, 2018 WL 6726555, at *19 n.17 (S.D.N.Y. Dec. 21, 2018).  Accordingly, the Court declines to consider at this time whether Defendants are protected by qualified immunity.

reasonableness test less restrictive than ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* (citation and quotation marks omitted). To state a free exercise claim, an inmate "must make a threshold showing that 'the disputed conduct substantially burdened his sincerely held religious beliefs.'" *Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015) (alteration omitted) (quoting *Washington v. Gonyea*, 538 F. App'x 23, 26 (2d Cir. 2013)); *see also Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (same). "Once [an inmate] establishes this burden, '[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct.'" *Smith v. Perlman*, No. 11-CV-20, 2012 WL 929848, at *7 (N.D.N.Y. Mar. 19, 2012) (quoting *Salahuddin*, 467 F.3d at 275). The burden then shifts back to the inmate "to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (citation, quotation marks, and alteration omitted).

Defendants first argue that Plaintiff fails to allege that his religious beliefs are sincerely held. (Defs.' Mem. 11–12.) This argument is meritless. Because "courts are singularly ill-equipped to sit in judgment on the verity of an adherent's religious beliefs, . . . an individual claiming violation of free exercise rights need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious." *Ford*, 352 F.3d at 588 (citations, alterations, and quotation marks omitted). The relevant inquiry is not whether, as an objective matter, the belief is "accurate or logical." *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir. 1996). Here, Plaintiff alleges that he is a "devout" Muslim "who makes salaat (individual prayer) five times daily, faithfully attends [Jumu'ah] services every Friday, and observes all Islamic holidays as well as the strict requirements of those holidays, like fasting and attending group prayer ceremonies. (TAC ¶ 8.) Plaintiff further alleges that the Islamic holiday at issue,

Eid-ul-Adha, "is a group prayer service," "is an imperative part of the Ramadan holiday," and "must take place as a group and must be administered by an Imam, before noon." (*Id.* ¶¶ 12–13.)[5] These allegations easily suffice to show that Plaintiff's religious beliefs are sincerely held. Indeed, beyond the conclusory assertion that Plaintiff's "allegations . . . fall short of what is required for a threshold showing of a free exercise clause claim," (Defs.' Mem. 12), Defendants fail to explain what, in particular, causes them to contest Plaintiff's religious sincerity. This is not a case where Plaintiff has entirely failed to allege that his religious beliefs are sincerely held. *Cf. Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988) ("Because [the plaintiff] has neither alleged nor submitted any proof that he sincerely holds to any religious belief that mandates the use of Tarot cards, we conclude that summary judgment was appropriate on the free exercise claim."); *Gambino v. Payne*, No. 12-CV-824, 2013 WL 1337319, at *8 (W.D.N.Y. Mar. 29, 2013) (noting that the "complaint is devoid of any allegations that would establish that [the plaintiff] has a sincerely held religious belief"). Nor is this a case where there are conflicting allegations that "tend[] to undercut the sincerity of Plaintiff's beliefs." *White v. York*, No. 15-CV-640, 2017 WL 1194514, at *6 (N.D.N.Y. Mar. 10, 2017), *adopted by* 2017 WL 1194368 (N.D.N.Y. Mar. 30, 2017). Indeed, even if there were such conflicting allegations, they would present factual disputes to be "resolved by the factfinder," not by the Court at the motion-to-dismiss stage. *Id.* (citing *Patrick v. LeFevre*, 745 F.2d 153, 159–60 (2d Cir. 1984)). Accordingly, the Court concludes that Plaintiff has easily satisfied his obligation to allege that his religious beliefs are sincerely held. *See Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301, 2018 WL 1626175, at *18 (S.D.N.Y. Mar. 30, 2018) ("Construing Plaintiff's allegations liberally, the

---

[5] Moreover, Plaintiff attached to his initial Complaint documentation about salaat, Jumu'ah services, and Eid-ul-Adha. (*See* Compl. 15–19.)

9

Court holds that he has sufficiently alleged that his religious beliefs are sincerely held at this stage of the proceedings to survive the Motions To Dismiss.").

Defendants next argue that Plaintiff fails to sufficiently allege a substantial burden on his religious beliefs. (Defs.' Mem. 13.) To demonstrate a "substantial burden," Plaintiff must show that "the state [has] put[] substantial pressure on [him] to modify his behavior and to violate his beliefs." *Rossi v. Fishcer*, No. 13-CV-3167, 2015 WL 769551, at *7 (S.D.N.Y. Feb. 24, 2015) (citations and quotation marks omitted). Here, Plaintiff alleges that Kitt effectively denied him the ability to attend the communal Eid-ul-Adha service by conducting the inmate call-out out 45 minutes later than the scheduled time and then, "before [Plaintiff and] those intent on attending [the] service could even leave the housing unit," telling "the housing unit officer not to release [him and] the [other observing] inmates because the ceremony was already over." (TAC ¶¶ 18, 20–21.) Put simply, Plaintiff alleges that Kitt "arbitrarily canc[e]ll[ed] the Eid-ul-Adha service." (*Id.* ¶ 20.)[6] Courts in the Second Circuit have held that, in general, missing one religious service does not constitute a violation of a plaintiff's constitutional rights. *See, e.g.*, *Johnson v. Newton*, No. 02-CV-1277, 2007 WL 778421, at *5 (N.D.N.Y. Mar. 13, 2007) (granting summary judgment on free exercise claim because "missing one religious service does not constitute a substantial burden on an inmate's right to the free exercise of his religion" (citation and quotation marks omitted)); *see also Lopez v. Cipolini*, 136 F. Supp. 3d 570, 588 (S.D.N.Y. 2015) (noting that "preclusion from attending two religious services is not, without more, a 'substantial burden' on a plaintiff's free exercise of religion" (collecting cases)); *Jean-Laurent v. Los*, No.

---

[6] Defendants' bewildering assertion that Plaintiff's prior "allegations" that he "was substantially burdened by missing one Eid-ul-Adha service . . . are missing in his [Third Amended Complaint," (Defs.' Mem. 13), is thus belied by the plain language of the Third Amended Complaint.

12-CV-132, 2015 WL 1015383, at *6 (W.D.N.Y. Mar. 9, 2015) (collecting cases). However, the Second Circuit has also held that where an inmate's "participation in the [religious service], in particular, is considered *central or important* to [the inmate's] practice of [his religion]," a substantial burden may nevertheless exist. *Ford*, 352 F.3d at 593–94 (emphasis added). Here, Plaintiff alleges that "[t]he Eid-ul-Adha is a group prayer service" that "is an *imperative* part of the Ramadan holiday" and "must be administered by an Imam, before noon." (TAC ¶ 13 (emphasis added).) Construed liberally, these allegations are sufficient, at the motion-to-dismiss stage, to establish that the Eid-ul-Adha service is a "central or important" part of Plaintiff's practice of his religion, particularly given that the Second Circuit has itself recognized that, "[a]ccording to the tenets of Islam, Eid-ul-Adha is an important Muslim festival." *Salahuddin v. Coughlin*, 993 F.2d 306, 307 (2d Cir. 1993). This is, then, "not a case in which Plaintiff has failed entirely to allege facts suggesting centrality or importance." *Kravitz v. Annucci*, No. 16-CV-8999, 2019 WL 1429546, at *5 (S.D.N.Y. Mar. 29, 2019) (collecting cases). To the contrary, the importance of Eid-ul-Adha to Plaintiff's religious practice is underscored by the allegations in the Third Amended Complaint that Plaintiff wrote numerous letters to religious and administrative officials at the Jail with concerns over the scheduling of the service and the possibility of Kitt's interference. (TAC ¶¶ 14–16.) *See Kravtiz*, 2019 WL 1429546, at *4 (noting that the plaintiff's complaints to prison officials regarding his observance of a religious holiday "can be read to suggest" that he viewed that holiday as sufficiently "important . . . , the denial of which was not 'constitutionally de minimis'" (citing *Ford*, 352 F.3d at 593)).

      Therefore, the Court concludes that Plaintiff has satisfied his burden of alleging that Eid-ul-Adha is "central or important" to the sincere exercise of his faith such that being prevented from attending that service, as alleged here, could constitute a substantial burden. *Ford*, 352

F.3d at 593–94. Accordingly, the Court denies Defendants' Motion To Dismiss the First Amendment Free Exercise Clause claim.

### 2. Personal Involvement

Plaintiff sues four individual Defendants: Kitt, Father Paul, Imam Nashid, and Doty. (*See* TAC 1.)[7] Defendants argue that Plaintiff fails to allege any Defendant's personal involvement in a constitutional violation. (*See* Defs.' Mem. 14–19.)

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (citation, italics, and quotation marks omitted). In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, a plaintiff must plausibly allege that a defendant's actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

---

[7] Plaintiff also sues Orlando, who is deceased and has been dismissed from this Action. *See supra* note 1.

As an initial matter, there is no question that Plaintiff has alleged Kitt's personal involvement. Plaintiff alleges that, on October 5, 2014, Kitt — a correction officer "responsible for calling Plaintiff and his housing unit to the Eid-ul-Adha service" — did not call the service at 11:00 a.m., as scheduled, but rather called it at 11:45 a.m. (*Id.* ¶¶ 17–18, 20–21.) Plaintiff further alleges that, "before those intent on attending said service could even leave the housing unit, Kitt called back and informed the housing unit officer not to release the inmates because the ceremony was already over." (*Id.* ¶ 18.) Plaintiff thus alleges that Kitt, acting without any "safety and security concern," nevertheless "arbitrarily canc[e]ll[ed] the Eid-ul-Adha service." (*Id.* ¶¶ 19–20.) In short, Plaintiff squarely alleges that Kitt "participated directly in the alleged constitutional violation." *Grullon*, 720 F.3d at 139; *see also Johnson v. Paul*, No. 17-CV-3654, 2018 WL 2305657, at *4 (S.D.N.Y. May 21, 2018) (holding personal involvement satisfied where the defendants allegedly themselves "failed to call [the religious] service" and "personally deprived him of [religious] meals").

Plaintiff does not allege that any other Defendant was a "direct" participant in the alleged constitutional violation. Plaintiff alleges that Father Paul — the Jail's "religious coordinator" and the official "responsible for scheduling . . . Islamic services" — "scheduled the Eid-ul-Adha ceremony" for 11:00 a.m. on October 5, 2014, and thereafter did not reschedule the service upon receiving Plaintiff's letter complaining about the scheduling conflict with lunch (or otherwise respond to that letter). (TAC ¶¶ 5, 12, 15, 22.) Similarly, Plaintiff alleges that Imam Nashid did not assist in rescheduling the service upon receiving a similar letter from Plaintiff complaining about the scheduling conflict. (*Id.* at ¶¶ 14, 22.) These allegations are insufficient to establish the personal involvement of either Father Paul or Imam Nashid. Plaintiff does not allege that the perceived scheduling conflict caused him to be denied his religious observance; rather, as

13

described above, Plaintiff alleges that Kitt, whose actions in delaying the call-out and then effectively cancelling the service were unrelated to Father Paul's scheduling of the service, interfered with Plaintiff's religious observance. (*Id.* ¶¶ 17–21.) Nor does Plaintiff allege that Father Paul or Imam Nashid, as religious officials, had any supervisory relationship (or indeed any interaction) with Kitt, a correction officer. Plaintiff thus fails to draw a connection between his scheduling complaints to Father Paul and Imam Nashid and the alleged constitutional violation. As such, Plaintiff fails to allege that Father Paul or Imam Nashid were "informed" of a constitutional violation and "failed to remedy" it, that they "created a policy or custom" leading to the constitutional violation, that they were "grossly negligent in supervising" Kitt, or that they "exhibited deliberate indifference" to Plaintiff's First Amendment rights by "failing to act on information indicating that unconstitutional acts were occurring." *Grullon*, 720 F.3d at 139; *see also Colon v. Annucci*, 344 F. Supp. 3d 612, 629 (S.D.N.Y. 2018) (finding no personal involvement where "[t]he Complaint contains no allegations whatsoever that these Defendants were involved in, aware of, or somehow permitted [the alleged constitutional violation] to take place"); *Shepherd v. Fisher*, No. 08-CV-9297, 2011 WL 3278966, at *4 (S.D.N.Y. July 27, 2011) (finding no personal involvement where the complaint did not allege that the defendant "was directly responsible for the provision of religious meals . . . or played any other role in the alleged deprivation"). Plaintiff therefore fails to allege sufficient facts to establish the personal involvement of Father Paul or Imam Nashid.

Finally, as to Doty — the Jail's "general warden" — Plaintiff alleges that he wrote a letter (actually addressed to Orlando and then "copied and sent" to Doty) informing him of the perceived scheduling conflict. (TAC ¶¶ 7, 16, 23.) This allegation — indistinguishable from the scheduling complaints made to Father Paul and Imam Nashid — does not establish Doty's

14

personal involvement for the same reasons. Plaintiff also alleges, however, that he informed Doty "about Kitt's behavior regarding him constantly calling Islamic services very late, and forcing them to be ended early, that complaints had been made about Kitt's repeated interference with Islamic services," and that he further "request[ed]," without response, "that Kitt not be put on the post responsible for calling and concluding the services." (TAC ¶¶ 16, 23.) Plaintiff thus appears to suggest a "gross negligence" or "deliberate indifference" theory of personal involvement. *Grullon*, 720 F.3d at 139. This allegation, however, is insufficient. Plaintiff provides almost no detail as to what, exactly, he allegedly stated in his letter to Doty — he describes no *specific* past instances of, or complaints about, Kitt's alleged interfering conduct. *See Casiano v. County of Nassau*, No. 16-CV-1194, 2017 WL 4484338, at *3 (E.D.N.Y. Sept. 30, 2017) ("[C]onclusory allegations of a supervisory official's knowledge are insufficient to state a claim arising under [§] 1983." (citations omitted)). Plaintiff thus fails to allege that Doty was "aware of facts from which the inference could be drawn that a substantial risk" existed of a future constitutional violation. *Farmer*, 511 U S. at 837. Further, even assuming the complaints were sufficiently factually specific, Plaintiff's "allegation that [Doty] failed to respond to a [letter of complaint] is insufficient to establish that [Doty] . . . exhibited deliberate indifference . . . by failing to act on information indicating that the [constitutional] violation" would later occur. *Rivera v. Bloomberg*, No. 11-CV-629, 2012 WL 3655830, at *6 (S.D.N.Y. Aug. 27, 2012) (citation and quotation marks omitted); *see also Allah v. Annucci*, No. 16-CV-1841, 2017 WL 3972517, at *7 (S.D.N.Y. Sept. 7, 2017) (collecting cases for the proposition that "an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations"). Nor does Plaintiff allege that the constitutional "violation is ongoing, such that [Doty's] inaction upon

15

receipt of the [letter of] complaint allowed the violation to persist." *McIntosh v. United States*, No. 14-CV-7889, 2016 WL 1274585, at *16 (S.D.N.Y. Mar. 31, 2016) (collecting cases). Plaintiff therefore fails to allege sufficient facts to establish Doty's personal involvement.

In sum, although Plaintiff clearly alleges the personal involvement of Kitt in the alleged free exercise violation, he does not allege sufficient facts to plausibly suggest the personal involvement of Father Paul, Imam Nashid, or Doty.

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted in part and denied in part. Defendants Father Paul, Imam Nashid, and Orlando are dismissed with prejudice.[8] However, Defendant Doty is dismissed without prejudice. If Plaintiff wishes to file a fourth amended complaint as to Defendants Kitt and Doty *only*, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within that fourth amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the fourth amended complaint will replace, not supplement, all prior complaints and filings. The fourth amended complaint must contain *all* of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

---

[8] Even pro se plaintiffs are not entitled to amend if the complaint "contains substantive problems such that an amended pleading would be futile." *Lastra v. Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012). The Court here dismisses in part the Third Amended Complaint; Plaintiff has thus "already had [three previous] bites at the apple, and they have proven fruitless." *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (citation, alterations, and quotation marks omitted). There is "no indication that a valid claim" as to Defendants Father Paul, Imam Nashid, and Orlando "might be stated if given [an additional] chance." *Al-Qadaffi v. Servs. for the Underserved (SUS)*, No. 13-CV-8193, 2015 WL 585801, at *8 (S.D.N.Y. Jan. 30, 2015), *aff'd*, 632 F. App'x 31 (2d Cir. 2016). Accordingly, the Court finds that further amendment as to these Defendants would be futile.

The Clerk of the Court is respectfully requested to terminate the pending Motion, (Dkt. No. 115), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

DATED: May 16, 2019
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE